## CHAMBERS v. SMACK.

Supreme Court. Kent. March, 1800.

*Clayton's Notebook, 24.**

*Vining* and *Rodney,* for the defendant, offered this book in evidence to prove the plea of payment by the word "paid" which was written in the column opposite the entry of the wheat.

*Ridgely,* for plaintiff, objected on two grounds: first, that the evidence furnished by the book was irrelevant; and second, it contains a charge of cash which is not such a thing as is properly chargeable in an account. 1 Del.Laws 328.

JOHNS, J. This is a case of great importance. Neither my brother nor myself recollects any determination on the express point since the organization of the present courts. I do recollect a single case in New Castle County before the existence of the present judiciary system. I was of counsel in the case of *Boggs and Lewden* to which I have alluded and which was decided in 1784. The principal point of defense was a discount from defendant's book. On the examination of defendant relative to his book, it was proposed to ask him whether he had not received payment of the money charged in his book. The objection principally was to the propriety of this question, but the point whether money could be charged in an account was barely moved and not insisted on by William Tilghman, of counsel for the plaintiff. I afterwards asked the counsel on both sides, *viz,* the late Chief Justice Read and William Tilghman, their opinion in rela-

---

* This case is also reported in *Wilson's Red Book, 282.*

tion to the charge of a cash item—and they disagreed—the latter thinking cash clearly could not be charged in an account.

The question with regard to the admission of defendant's book in the present case is of the utmost importance. The reason why I am of opinion (for there is a shade of difference between my brother and me) that the book is not admissible is, because it appears to me to be merely a millbook relative to the delivery of wheat and does not seem to be a "book of accounts."

But the Court think that this book is evidence in some respects, such as the receipt of wheat, its weight and quantity—but not to prove payment for it.

My brother Clayton is of opinion that the book is irrelevant—but the Court think it evidence for the purposes I have mentioned.

CLAYTON, J., observed that the Court were unwilling to determine the point with regard to the propriety of charging money in an account, as it has always been the practice of the country to make such charges (of which he gave a number of instances). The practice of the farmers throughout the country, about the time of harvest is to borrow money from the storekeepers to pay their harvest laborers, which money is charged by the storekeepers as of the same day and date. He knew of no instances of notes or receipts being given or even required. And the mischief would be incalculable were we now to set afloat all the just debts which are supported by such evidence. That important question need not here be decided because the book offered by the defendant to prove payment is not properly such a book of accounts as could contain a cash item. It is a book kept merely for the purpose of showing the receipt, weight, and quantity of wheat, and it is not offered to show any of these—therefore, I think it irrelevant *in toto*.

And yet for his own part he was unwilling to decide that money is an article properly chargeable in an account so far as to discharge a man from the payment of a bond by a set off. Such a practice would be mischievous in the highest degree, as under it any dishonest man might furnish himself with evidence to defeat the payment of an honest bond against him. It is for these reasons that the Court have avoided the determination of the points which has been in part agitated at the bar.

[NOTE.] Suppose the case of a single charge—perhaps book then inadmissible—so held in New York, *Vosburgh v. Thayer*, 12 Johns. 461, because then no evidence of a regular dealing between parties. Our statute directs the book to be regularly kept. See Phill.Ev. 199 n.